In the Matter of JAMES R. WORLEY, Petitioner, v. JAMES E. ALLEN, JR., as Commissioner of Education of the State of New York, et al., Respondents.

Third Department, March 28, 1961.

*Robert P. Brisson* for petitioner.

*Charles A. Brind, Jr., John P. Jehu, Elizabeth M. Eastman* and *George B. Farrington* for Commissioner of Education, respondent.

*Parker, Duryee, Benjamin, Zunino & Malone (Robert M. Benjamin* and *Raymond A. Carter* of counsel), for Board of Education of Central School District No. 2, respondent.

*Benjamin Mazen* for United Federation of Teachers, *amicus curiæ.*

BERGAN, P. J. Petitioner is a competent, and perhaps inspired, teacher of English who was employed at the Fox Lane Senior High School of the Bedford Central School District in Westchester Coun�a ,

Because he refused to accede to administrative rules promulgated by his superiors which he regards as inept and unfitting, as well as unauthorized, but which the appropriate education authorities, including the State Commissioner of Education, treat as lawful and reasonable, he has been discharged from his teacher's place. The problem on review is whether a case for judicial interference is shown; we see no case.

The controversy moves in an extremely simple factual pattern, but the argument suggests large implications in the area of academic freedom. At a faculty meeting at the Fox Lane School on September 23, 1959 the assistant principal, whose responsibility embraced senior high school work, told the teaching staff that " lesson plans " were required to be filed in advance for two-week periods, the first on September 25.

The purpose for filing " lesson plans ", as stated by the District Board of Education, is " to insure to the administrators that teachers were in fact continuously preplanning their classroom instructions, to inform the administrators on the general nature of this lesson preplanning, to enable the administrators to assist teachers in their lesson preplanning, and to have lesson outlines available to substitute teachers." The " plans " included the program and material for the succeeding two weeks as the teacher contemplated carrying them out in the classroom.

Petitioner, who was a teacher at the school on tenure and was chairman of the High School English Department, refused to obey the September 23 direction given to the teachers; and on five separate occasions from September 29 to October 15, refused to file any " lesson plan ". All other senior high school teachers complied. Petitioner himself had complied in the previous year, 1958–1959, with lesson plan directions on a one-week basis.

On October 15, petitioner was suspended pending charges and a hearing before the Board of Education of the district; and on November 23, 1959, after holding the hearing, the board dismissed him. Petitioner appealed to the Tenure Commission (Education Law, § 3012), which recommended the board's decision be upheld; and he then appealed to the State Commissioner of Education, who affirmed the Tenure Commission's recommendation. From the Commissioner's decision petitioner comes here.

The main points which petitioner makes here are that the Board of Education had no power to require any teacher to file lesson plans; that the directive by the assistant principal for filing was not authorized by the board; and that the requirement is unreasonable.

But petitioner's brief concedes that the Board of Education has power to " regulate " the " course of study " and to have management and control of the " educational affairs of the district ". And the board itself asserts this power arising from the statute (Education Law, § 1709, subd. 33, read with § 1804, subd. 1; see, also, rule-making power of the board, § 1709, subd. 1). We think the directive for lesson plans lies well within the frame of the board's authority and the board is in possession of the necessary implementing power of delegating to its administrative officers the right to carry out its policies.

The residual question is whether the requirement for " lesson planning " was reasonable. Even in the case of highly talented teachers, educational authorities would normally be expected to have the power to see they perform their jobs; are in regular and prompt attendance; carry out the authorized syllabus, and teach specified areas of the subject matter.

This is a minimal necessary power for any functioning school administration. The Tenure Commission ruled that in the directive for lesson planning " familiar, long-established practice of school administration was carried out in a liberal and reasonable manner ". In such a situation, even though the petitioner may be in vigorous disagreement, he must yield his dissent to the wisdom of the regulation and, if he is to stay in that school, obey the directive.

There is some loss of academic freedom in all organized education as, indeed, there is loss of personal freedom under all organized government. One must go pretty far back in the history of education to find the teacher utterly beyond regulation in his teaching; no doubt Plato came as near to this as anyone, and Aristotle achieved it to a somewhat lesser degree; but Socrates had earlier felt the sharp discipline of the Athenian State on the very subject matter of his teaching, his instructional methods, and their effects on youth. And when the school becomes the common enterprise of more than one teacher, the discipline and direction usual to common enterprises are felt as the need of the school, too.

The uncramped teacher of high ability is a prime asset to any society in any period. But the aim of instruction insofar as the community takes a sufficient interest in the matter to foster and support it, is that youth shall be so enlightened and

informed as to use well his personal capacities within the necessary rules by which the community lives and achieves cohesion.

The rules of the community are the indispensable condition of its organized existence; and individual conformity with the rules is the hard necessity of organized community life; a necessity which imposes itself even on the highly gifted person.

Hence the machinery by which formal education is managed is in part a discipline for living in a community, both taught to the pupil and binding on the teacher. But this is not only a matter of object lesson by which the teacher's conformity to common rules serves for the pupil's edification; without discipline and management formal education would not have been possible; and it would not exist.

The universities that sprang up in medieval Europe were founded on it; in the development of the great institutions of education in our times it has been indispensable; and every educational organism, the college of arts and of science; the medical college and the law school; and the district high school, as well, each depends on it to function at all.

To say this is to say that rules of management are necessary to run schools; and that teachers, even very able ones, must obey the rules of management if the schools are to run at all.

There are areas where the integrity and conscience of the teacher ought to be asserted against the suppression of truth or the circumvention of knowledge. But this lesson-plan controversy is no such exalted cause. It is not easy to see suppression of academic freedom in the programming of teaching material disclosed by the record before us.

The determination of the Commissioner of Education should be confirmed, without costs.

Coon, Gibson, Herlihy and Reynolds, JJ., concur.

Determination of the Commissioner of Education confirmed. without costs.